UNITED STATES, Appellee,

v.

Paul J. CASTELLONE, Defendant,
Appellant.

No. 92–1709.

United States Court of Appeals,
First Circuit.

Heard Dec. 11, 1992.

Decided Feb. 8, 1993.

Edward J. Romano, with whom Michael Devlin, Providence, RI, was on brief, for defendant, appellant.

Stephanie S. Browne, Asst. U.S. Atty., with whom Margaret E. Curran, Asst. U.S. Atty., and Lincoln C. Almond, U.S. Atty., Providence, RI, were on brief, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Defendant-appellant Paul J. Castellone pled guilty to a two-count information in which he was charged with distribution of marijuana, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 21

months of imprisonment and three years of supervised release. In this appeal, Castellone challenges his sentence on two grounds related to the district court's calculation of the offense level assigned to his conviction. Specifically, defendant argues: 1) that the court erroneously included as relevant conduct certain amounts of marijuana sold by a coconspirator; and 2) that the court should not have ascribed to him a managerial role in the offense. As we find these arguments persuasive, and the government has candidly made us aware of an apparent mathematical error in the offense level calculation, we remand for resentencing.

## I.

### Background

Because Castellone pled guilty, we garner the relevant facts from the probation officer's Pre–Sentence Report (PSR) and the transcript of the sentencing hearing. *United States v. Garcia*, 954 F.2d 12, 14 (1st Cir.1992). In early January 1992, Detective Michael Purro of the Providence, Rhode Island, Police Department began an undercover investigation of marijuana trafficking by Castellone and Roland R. Chaput. Purro was assisted by an agent from the federal Bureau of Alcohol, Tobacco and Firearms.

On January 9, 1992, Detective Purro, in his undercover capacity, purchased one pound of marijuana from Castellone for $2,200 ("the first sale"). The next day, Purro purchased another pound of marijuana from Castellone for the same price ("the second sale"). Both sales took place in the late afternoon at a Dunkin' Donuts on East Street in Providence. Prior to the second sale, Purro followed Castellone to the Dunkin' Donuts parking lot and observed Chaput arrive and enter Castellone's car. Purro then approached Castellone's vehicle and introduced himself directly to Chaput, whom he believed, correctly, as it later turned out, to be Castellone's supplier.

At some point between January 10 and 16, Castellone and Purro discussed a sale of five pounds of marijuana and a handgun. Castellone told Purro that he had been in contact with Chaput and would be able to execute the sale. Since law enforcement officials considered Chaput to be a higher-level dealer and a more important target than Castellone, Detective Purro decided to exclude Castellone from any future deals, and instead buy directly from Chaput. After obtaining Chaput's phone number from a confidential informant, Purro contacted him and after discussion was offered five pounds of marijuana for $1700 per pound ("the third sale"). Castellone was totally unaware of the third sale or the direct contact between Purro and Chaput.

On January 16, 1992, at approximately 6:30 p.m., Chaput, Purro, and two other men, Robert Laiter and Peter M. Leite, all arrived at the Dunkin' Donuts in separate vehicles. Chaput retrieved a handgun from Laiter's car and delivered it to Purro. Chaput, Laiter and Leite were all arrested as Chaput was removing the marijuana from the trunk of Leite's car. Law enforcement agents found five, approximately one-pound packages of marijuana in the trunk.[1]

Castellone was not present at the third sale, but was later arrested pursuant to a warrant. He subsequently agreed to plead guilty to an information charging him with the first two marijuana deals. He also agreed to assist the government in its attempts to arrest others in the drug trade. In return for his cooperation, the government agreed not to charge him with conspiring with Chaput to distribute marijuana. The plea agreement also indicated that the weight of the two sales to which Castellone was pleading was 908.7 grams. Moreover, the government agreed it would not seek to hold Castellone responsible at sentencing for the 2,300.3 grams or the firearm seized at the January 16, 1992, arrest. Finally, the government agreed to recommend a sentence at the low end of the applicable guideline range.

---

1. The total weight of the five packages was 2,300.3 grams. As a pound contains 454 grams, the contraband slightly exceeded five pounds.

## II.

### Sentencing

In calculating Castellone's base offense level ("BOL"), the probation officer used a total quantity of 3209 grams of marijuana. This amount included the 2,300.3 grams Chaput delivered to Purro at the third sale, as well as the 908.7 grams Castellone sold directly to Purro at the first two sales. Applying the Sentencing Guidelines' Drug Quantity Table, U.S.S.G. § 2D1.1(c), the probation officer tabulated a BOL of 12, applicable to quantities of marijuana between 2.5 and five kilograms. The BOL was increased by two levels for Castellone's managerial role in the offense, U.S.S.G. § 3B1.1(c), and decreased by two levels for acceptance of responsibility. After assigning Castellone a criminal history category of I, the probation officer concluded that Castellone's offense level was 12, with a resulting guideline range of 10 to 16 months.

Prior to sentencing, Castellone objected to the inclusion of the 2300.3 grams of marijuana from the third sale as relevant conduct, as well as to the two-level adjustment for a managerial role in the offense. At the May 19, 1992, sentencing hearing, the defense put Detective Purro on the stand to testify about, *inter alia*, Castellone's involvement—or lack thereof—in the third sale. At the close of the hearing, the trial court expressed concern over what it thought to be an inconsistency between the government's plea agreement obligation not to hold Castellone responsible for the third sale, and the probation officer's statement that in response to Castellone's objection, the government was prepared to present evidence regarding Castellone's role in the third sale. Accordingly, the trial court gave Castellone the option of withdrawing his guilty plea. Castellone declined, and the sentencing hearing reconvened on June 15, 1992, whereupon the government reiterated its position that defendant was legally responsible only for the 908.7 grams of marijuana from the first two sales. The

court, however, questioned the government's decision to forego inclusion of the 2300.3 grams. In response, the government cited the plea agreement, which, in turn, was based on its conclusion that the element of foreseeability of the third sale, as it related to Castellone, was "questionable." The trial court then ordered further testimony from Purro, to elaborate on what, if any, nexus existed between Purro and Castellone's last conversation and the third sale.

Following Purro's testimony, and defense argument, the court found that Castellone initiated the third sale and that he took two actions in furtherance of that sale by initiating the negotiations with Purro and by communicating Purro's marijuana and handgun order to Chaput. Based on those findings, the court ruled that the third sale constituted relevant conduct for which Castellone should be held responsible.

Next, having heard argument regarding Castellone's role in the offense, the trial court found that Castellone's negotiations in the first two sales and involvement in the third supported an offense level increase for a managerial role. Castellone appeals these two findings.

## III.

### Discussion

At the outset, we note that remand is in order to correct an apparent mathematical error in calculating Castellone's offense level, irrespective of our decision on the merits of the trial court's findings.[2] A brief explanation follows.

The court found that the third sale, involving the 2300.3 grams of marijuana and the handgun, was relevant conduct for purposes of determining Castellone's offense level. As noted, *supra*, p. 22, this amount of marijuana yielded a BOL of 12. The firearm added two levels, to 14. U.S.S.G.

---

**2.** Although Castellone failed to raise this argument before the trial court, we do have jurisdiction to correct plain error. *United States v. Morales–Diaz,* 925 F.2d 535, 539 (1st Cir.1991).

§ 2D1.1(b)(1).[3] The court's ruling on Castellone's managerial role added two more levels, resulting in an adjusted offense level of 16. U.S.S.G. § 3B1.1(c). Finally, the court agreed that Castellone was entitled to a two-level reduction for his acceptance of responsibility, U.S.S.G. § 3E1.1(a), suggesting an offense level of 14, which, when coupled with a criminal history category I, yields a sentencing range of 15 to 21 months. U.S.S.G. § 5, Part A, Sentencing Table. The court, however, after factoring in the relevant conduct, erroneously began with an offense level of 18, which it reduced to 16 based on Castellone's acceptance of responsibility. Thereafter, consistent with the plea agreement, the trial court sentenced Castellone at the lenient end of the 21 to 27 month range called for by offense level 16. While we might assume that the district court would again follow the plea agreement and sentence Castellone to the bottom end of the corrected guideline range, our other rulings relative to the instant sentence require remand of this item as well.[4] We turn now to the substantive issues on appeal.

## A. Relevant Conduct—The Third Sale

■ Pursuant to U.S.S.G. § 2D1.1(c), the BOL for drug trafficking offenses depends on the quantity of contraband attributable to the defendant. For sentencing purposes, this total includes the amount to which the defendant pleads guilty, as well as any relevant uncharged conduct. *Garcia*, 954 F.2d at 15 (citations omitted). "[D]rugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3, comment. (background). In cases involving drug conspiracies, relevant conduct also includes "all reasonably foreseeable acts and omissions of others in furtherance of" the conspiracy.

U.S.S.G. § 1B1.3(a)(1)(B); *Garcia*, 954 F.2d at 15. In order to factor the quantities associated with relevant conduct into the sentencing formula, the government must establish by a preponderance of the evidence that a sufficient nexus exists between the conduct at issue and the offense of conviction. *United States v. Sklar*, 920 F.2d 107, 110 (1st Cir.1990). We will set aside the district court's findings on relevant conduct only if they are clearly erroneous. *United States v. Camuti*, 950 F.2d 72, 74 (1st Cir.1991).

■ As he did below, Castellone argues here that the government's decision to "cut him out" of the third sale and deal directly with Chaput without his knowledge inoculates him from responsibility for the sale. Castellone bases his argument on the following undisputed facts. Castellone's relationship with Purro was severed after only preliminary conversations relative to the third sale wherein the two never agreed that a sale would take place, or on a price for such a sale. Furthermore, due to his own profit motive, Castellone did not want Purro to deal directly with Chaput, did not know Purro was going to do so, and did not know that the third sale had occurred until after his arrest.

The trial court, however, found that Castellone and Chaput had formed a conspiracy to sell marijuana, and that Castellone initiated the negotiation for the third sale and communicated Purro's third sale request to Chaput. The court then determined that the third sale was both foreseeable to Castellone and in furtherance of the conspiracy. Therefore, the trial court concluded that the third sale was relevant conduct for purposes of sentence calculation. Based on the following, we disagree.

In analyzing this situation, we find that two of our recent decisions offer direction. In *United States v. Wood*, 924 F.2d 399

---

**3.** The PSR omitted reference to the firearm, and thus did not account for the two-point upward adjustment. The trial court, however, explicitly found that the gun, as part of the third sale, was relevant conduct attributable to Castellone. While Castellone does not specifically appeal the propriety of the handgun increase, he did object to and has appealed the inclusion of the

third sale. The handgun increase, therefore, succeeds or fails concomitant with the third sale, without meriting separate discussion.

**4.** Because of our decision today, the low end of the applicable guideline range may lead to a sentence not involving incarceration. We leave that decision to the district court.

(1st Cir.1991), the defendant was convicted of one narcotics sale. At sentencing, the district court placed additional, uncharged sales into the relevant conduct category. We ruled that an uncharged sale between defendant's wife and a drug supplier, of which the defendant had no knowledge until after the fact, could not be considered relevant conduct for sentencing purposes. *Id.* at 404–05. We rested our decision on the fact that the defendant "in no way conspired to facilitate the deal; indeed, he had no knowledge that his wife was engaged in drug transactions with anyone other than himself." *Id.* Subsequently, we upheld a district court's decision to include as relevant conduct drug sales between the defendant's coconspirator and an undercover agent, despite the fact that the defendant was not personally involved in the later sales. *Garcia,* 954 F.2d at 16–17. A fair reading of *Garcia,* however, indicates that the defendant and his coconspirator worked as a team to sell drugs to the undercover officer. As we noted:

> "*Garcia introduced [his coconspirator to the undercover agent]* for the express purpose of facilitating drug transactions. *He was aware of the nature and salient details of the relationship that developed between the two men.* There was no evidence of Garcia's affirmative withdrawal from the conspiracy *or of any other intervening event materially affecting the trafficking calculus.*"

*Id.* at 16 (emphasis added). We stated that "the measure of a defendant's accountability for drug transactions in which he was not personally involved is usually congruent with the scope of his agreement with the other participants in the enterprise." *Id.* (citation omitted). We therefore distinguished *Wood* on the ground that "Garcia's agreement with his coconspirator [ ] could reasonably be said to transcend the initial series of transactions." *Id.*

Here, with *Wood* and *Garcia* as our guideposts, we find that Castellone was

sufficiently detached from the third sale so that it stands alone, and not as part of an overall course of conduct. Based on our review of the record, we doubt whether Castellone could have foreseen that the third sale, about which he knew nothing, would take place as it did, from Chaput directly to Purro. And although the evidence supports the district court's conclusion that Castellone and Chaput had formed a conspiracy to sell marijuana, there is no evidence that the third sale was in furtherance of a common plan between Castellone and Chaput. Just as the defendant in *Wood* had no knowledge that his wife dealt with anybody but him, Castellone had no reason to expect Purro to deal directly with Chaput. The record is clear that Castellone was little more than a street-level "retail" dealer, and that Chaput was his "wholesaler," rather than his partner. This conclusion is supported by the circumstances of the first two sales, wherein Castellone bought marijuana from Chaput, and sold it to Purro for a several hundred dollar profit.[5] As for the third sale, the record does not support the trial court's conclusion that Castellone initiated the negotiations. Purro's testimony indicated only that the two "had communication" after the second sale, but is silent as to the instigator. Moreover, while the record does support the finding that Castellone told Chaput of Purro's interest in another sale, there is nothing in the record to indicate that Castellone's call to Chaput was anything other than part of the previous *modus operandi.* In other words, after Purro made the request for more marijuana and a gun, Castellone attempted to accommodate him by contacting his supplier. There is nothing in the record to indicate that Castellone's call to Chaput was intended to facilitate the Chaput–Purro transaction. Indeed, such a conclusion defies logic, because the record demonstrates that Castellone's only source of narcotics-related income was his own "retail" operation. Unlike the defendant in *Garcia,* Cas-

---

**5.** The exact amount of Castellone's per-pound profit is disputed. Resolution of that issue, however, is insignificant to our analysis.

tellone was in business for himself. Also unlike the scenario in *Garcia*, Castellone never introduced Purro to Chaput. Had events taken their usual course, as Castellone had every reason to expect, Castellone would have again purchased the contraband from Chaput, factored in a profit, and re-sold it to Purro. Castellone, however, never again discussed the sale with Purro, as he had been, unbeknownst to him, bypassed. This is akin to the "intervening event" adverted to in *Garcia*. Thus, there was no evidence from which the court could properly find that the third sale was in furtherance of a common scheme involving Castellone and Chaput. Accordingly, we find the district court's inclusion of the third sale as relevant conduct to be clearly erroneous.[6]

## B. The Managerial Role

■ Despite entreaties from both the defense and government, the trial court assessed Castellone a two-level increase in his BOL for his role as a manager of criminal activity pursuant to U.S.S.G. § 3B1.1(c). Upon review of the record, we find this increase legally insupportable.

■ At the outset, we note that the government bears the burden of proving that an upward adjustment was warranted. *United States v. Ortiz*, 966 F.2d 707, 717 (1st Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993). To meet its burden, the government must demonstrate that Castellone exercised "some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime." *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir.1990). Here, we find the record devoid of evidence of such control or organization. On appeal, the government argues that Castellone determined who purchased, when and where sales took place, prices, and profit. Thus, the argument goes, it was Castellone's de-

cisions on those matters that effectuated his control over when and where Chaput and others presented themselves. With respect to the first part of the argument, the same can be said of any independent, street-level dealer. In fact, no street-level drug sale could ever be made without a customer, a time and location for the sale, and a price. Furthermore, the profit Castellone determined was his own, not Chaput's. Moreover, the second part of the argument is unsubstantiated. There is simply no evidence that Castellone exercised any control over the movement of Chaput—or anyone else. In ruling in favor of the increase, the trial court stated:

> It's not necessary that a [d]efendant be the CEO of the operation to be in a managerial role. Here, there is no question but that the Defendant negotiated the first two transactions and began the negotiations for the third transaction, and along with Mr. Chaput, the transactions were carried out. It seems to me those facts do establish a managerial role on his part. . . .

Conspicuously lacking from the court's analysis, however, is any finding that Castellone organized or exercised control over others—that is, that he "managed" or "organized," within the meaning of section 3B1.1(c).[7] We have recently stated that an upward BOL adjustment "must be based on more than the trial judge's hunch, no matter how sound his instincts or how sagacious his judgment." *Ortiz*, 966 F.2d 707, 717 (1st Cir.1992). The evidence in this case does not support such an adjustment.

*Appellant's sentence is vacated and the case is remanded to the district court for resentencing in accordance with this opinion.*

---

**6.** We are not unmindful of our recent decision in *United States v. Moran*, 984 F.2d 1299 (1st Cir.1993). However, we view the facts of this case quite differently than those in *Moran*.

**7.** By comparison, Chaput, who also received a two-level managerial role adjustment, was accompanied by his subordinates at the third sale.