**UNITED STATES of America, Appellee,**

v.

**Pedro REYES, Defendant, Appellant.**

No. 92–2124.

United States Court of Appeals,
First Circuit.

Heard May 3, 1993.

Decided Aug. 30, 1993.

Randy Olen, Narragansett, RI, by Appointment of the Court, with whom John M. Cicilline, Providence, RI, was on brief, for defendant, appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Kenneth P. Madden, Asst. U.S. Atty., Providence, RI, were on brief, for appellee.

Before TORRUELLA, Circuit Judge, FEINBERG,* Senior Circuit Judge, and BOUDIN, Circuit Judge.

TORRUELLA, Circuit Judge.

Pursuant to a plea agreement, defendant-appellant Pedro Reyes pled guilty to one count of conspiracy to distribute and to possess with intent to distribute cocaine and one count of distribution of cocaine. In this appeal, Reyes challenges the district court's calculation of his guideline sentencing range ("GSR"), contesting the inclusion, as relevant conduct, of transactions involving his codefendant, which were the subject of charges dropped pursuant to the plea agreement. Finding no clear error, we affirm.

*I*

Because Reyes pled guilty, we distill the relevant facts from the Pre–Sentence Report

* Of the Second Circuit, sitting by designation.

("PSR") and the transcript of the sentencing hearing. *United States v. Castellone*, 985 F.2d 21, 22 (1st Cir.1993). Reyes and codefendant José Tavárez–Tolentio ("Tavárez") were the subjects of a combined Drug Enforcement Administration ("DEA") and local law enforcement drug investigation.

On the evening of Monday, January 27, 1992, West Warwick detective Sergeant Peter Appollonia met Tavárez outside a building at 61 Whipple Street in Providence, Rhode Island. The two men proceeded to a second floor apartment where they met Reyes. Electric Company records indicate that Reyes leased the apartment. Once inside, Tavárez produced a bag containing 27.4 grams of cocaine from the bathroom; Reyes and Appollonia negotiated the price of this transaction and a quantity discount for a future sale of two ounces of cocaine. Appollonia then inquired if he could purchase the two ounces on Wednesday and Reyes told Appollonia to come by at anytime. The transaction concluded when Appollonia paid Reyes $900 for the 27.4 grams and Reyes counted the money.

The next day, January 28, 1992, DEA Special Agent Botelho met Tavárez at 1455 Mineral Spring Avenue in North Providence. Tavárez brought Botelho to apartment sixteen where they met a man known as "Tony." Tavárez gave Botelho 124 grams of cocaine and Botelho paid him $3,100. Shortly after Botelho entered the building on Mineral Street, DEA agents observed Reyes drive his BMW, accompanied by a grey Oldsmobile, from his 61 Whipple Street address to the building on Mineral Street. When the two vehicles arrived, the Oldsmobile proceeded to the rear of the building. Reyes parked nearby, exited his vehicle, walked around the parking lot adjacent to the Mineral Street building, and returned to his car where he waited. Shortly before the transaction between Botelho and Tavárez was completed, Reyes and the Oldsmobile departed the area and returned to 61 Whipple Street. The DEA interpreted Reyes' actions as countersurveillance for the deal occurring above in apartment sixteen.

On Saturday, February 1, 1992, at approximately 5:30 p.m., detective Appollonia returned to 61 Whipple Street to purchase more cocaine. He encountered Reyes entering a Ford Escort and inquired whether Reyes had cocaine for sale. Reyes directed Appollonia to return later, at which time he, Reyes, would have the cocaine. Reyes then departed. At approximately 6:00 p.m., Reyes returned to 61 Whipple Street in his BMW, followed by the grey Oldsmobile, and entered the building. Appollonia returned at 6:07 p.m. and met Tavárez in the second floor apartment. Reyes was not present. Tavárez left the apartment and returned with 54.9 grams of cocaine. Appollonia inquired whether Reyes had informed Tavárez that the price was set at $1,700, representing the quantity discount previously negotiated. Tavárez indicated that Reyes had done so. Appollonia paid for the cocaine and left the premises.

On Monday, February 10, 1992, at approximately 1:15 p.m., agent Botelho returned to 1455 Mineral Street to buy more cocaine. He met Tavárez, who agreed to sell him four and one-half ounces of cocaine. Tavárez left Mineral Street and drove in a red Toyota wagon registered to Reyes to 61 Whipple Street.

Approximately 35 minutes later, Tavárez returned to the Mineral Street address. Botelho observed Tavárez and Reyes inspecting Botelho's car, which was parked in the adjacent lot. Tavárez again met with Botelho and claimed that he would have to go to South Providence to obtain the cocaine. Tavárez departed a second time, and the Toyota and Reyes' BMW went to 61 Whipple Street. DEA agents observed Tavárez, Reyes and an unidentified man entering the building. Tavárez then returned to Mineral Street with 124.1 grams of cocaine. Botelho alerted other agents and Tavárez was arrested. Later, Reyes was arrested at 61 Whipple Street, where the police found .18 grams of cocaine.

Count one charged that from a time unknown until February 10, 1992, Reyes and Tavárez conspired to distribute, and to possess with intent to distribute, cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Counts two, three, and four charged Reyes and Tavárez with distribution of cocaine on January 27 and 28, and February 1, 1992, in

violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. Count five charged Reyes and Tavárez possessed cocaine with intent to distribute it on February 10, 1992, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. Reyes pled guilty to counts one and two and the government dropped the charges in counts three, four, and five.

At sentencing, the district court determined the GSR based on the quantity of drugs involved in all the transactions, including amounts related to the dropped charges. The quantity therefore was 330.58 grams, which resulted in a base offense level of 22. United States Sentencing Guidelines § 2D1.1(c)(11) (Drug Quantity Table). The judge adjusted the base offense level downward by two levels for acceptance of responsibility. U.S.S.G. § 3E1.1(a). With an offense level of 20 and a criminal history category of I, the GSR was 33 to 41 months. The judge sentenced Reyes to 33 months.

On appeal, Reyes contests the calculation of the GSR, arguing that he should be sentenced based on the 27.4 grams of cocaine involved in the January 27 transaction to which he pled guilty. Based on a 27.4 grams, the base offense level would be 14, yielding an offense level of 12 after reduction for acceptance of responsibility. Reyes contends therefore that the GSR ought to have been 10 to 16 months.

## II

■ For the purposes of sentencing, the key factor is the quantity of drugs involved. That quantity is "the sum of the charged conduct to which defendant pleads plus his 'relevant' uncharged conduct." *United States v. Bradley*, 917 F.2d 601, 604 (1st Cir.1990). "The drug quantity is to be derived from all acts 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Garcia*, 954 F.2d 12, 15 (1st Cir.1992) (quoting U.S.S.G. § 1B1.3(a)(2)). "This court has repeatedly upheld the inclusion as relevant conduct of acts either not charged or charged but dropped." *Id.* (citing cases). In the case of jointly undertaken criminal activity (whether or not charged as a conspiracy), relevant conduct includes all acts reasonably foreseeable by the defendant and committed in furtherance of the jointly undertaken activity. U.S.S.G. § 1B1.3, comment. (n. 1); *Castellone*, 985 F.2d at 24; *Garcia*, 954 F.2d at 15. To include disputed transactions as relevant conduct, the government must prove by a preponderance of the evidence a sufficient nexus between the conduct underlying the dropped charges and the offense of conviction. *Castellone*, 985 F.2d at 24; *United States v. Sklar*, 920 F.2d 107, 110 (1st Cir.1990). We accord considerable deference to the district court's determination that drug transactions in dropped charges form part of the same course of conduct as counts of conviction and, absent mistake of law, will set aside those findings only if clearly erroneous. *Castellone*, 985 F.2d at 24; *Garcia*, 954 F.2d at 15.

■ Reyes contends that the government did not prove by a preponderance of the evidence a sufficient nexus between the charges of convictions and the January 28, February 1, and February 10, 1992 transactions. Reyes emphasizes that he was not physically present during these transactions and that the district court found that Tavárez operated his own heroin concern without Reyes' participation. Reyes asserts that, like the heroin business, Tavárez was distributing cocaine without Reyes' knowledge and in furtherance of only Tavárez' individual interests.

With respect to the February 1, and February 10, 1992 drug deals, Reyes' assertions are ridiculous. To begin with, Reyes indicated at the January 27, drug sale, to which Reyes pled guilty, that detective Appollonia could come by anytime to purchase cocaine. The natural inference is that Reyes operated a cocaine distribution business. On February 1, detective Appollonia encountered Reyes outside Reyes' 61 Whipple Street address, and asked to purchase cocaine. Reyes asked Appollonia to return later when the cocaine arrived. Reyes left the building and returned. Moments later, Appollonia entered Reyes' second floor apartment and purchased cocaine from Tavárez. Reyes was not observed leaving the building. The district judge could fairly infer that Reyes had

brought the cocaine back to Whipple Street, allowing Tavárez to conduct the actual sale.

The February 10 transaction is similarly linked to Reyes. Although the drug buy involved a different law enforcement agent, Botelho, and occurred at a different address, 1455 Mineral Street, Tavárez drove a vehicle registered to Reyes to Reyes' apartment; returned with Reyes to Mineral Street, where the two observed Botelho's vehicle and the surrounding area; again returned to Whipple Street with Reyes; and finally went back to Mineral Street to sell Botelho the cocaine. This series of actions supports an inference that Tavárez had to clear the sale with Reyes, that the two conducted an investigation of Mineral Street before proceeding, and that Reyes provided the cocaine from the Whipple Street address.

The evidence connecting Reyes to the January 28 transaction admittedly is less convincing. When considered with the three other drug deals, however, we cannot conclude that the district court's inclusion of this evidence as relevant conduct was clearly erroneous. The other three transactions support the inference that Tavárez and Reyes worked closely together on cocaine sales and that Reyes was the supplier. Given the reconnaissance mission during the February 10 transaction, the visit paid to the parking lot at Mineral Street by Reyes in his BMW and the grey Oldsmobile during the January 28 deal would also appear to be surveillance. The district court could reasonably infer from all the evidence that the conduct underlying the dropped charges formed part of the same course of conduct. As we made clear in *United States v. Ruiz*, 905 F.2d 499, 508 (1st Cir.1990), "where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." The district court therefore was entitled to include the quantities of cocaine from all the transactions when determining the GSR.

Finding no clear error, we *affirm.*