USCA1 Opinion

 

 January 25, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1100 UNITED STATES OF AMERICA, Appellee, v. RUBEN MARTINEZ, Defendant, Appellant. ___________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ Stahl, Circuit Judge. _____________ ____________________ Arthur R. Silen, by Appointment of the Court, for appellant. _______________ Margaret E. Curran, Assistant United States Attorney, with ___________________ whom Edwin J. Gale, United States Attorney, and Gerard B. ______________ __________ Sullivan, Assistant United States Attorney, were on brief for ________ appellee. ____________________ ____________________ Per Curiam. Defendant Rub n Mart nez pleaded guilty to Per Curiam __________ two counts of conspiring to distribute cocaine in violation of 21 U.S.C. 846 and three counts of distributing or possessing with the intent to distribute cocaine in violation of 21 U.S.C. 841(a)(1) & 18 U.S.C. 2(a). On January 7, 1993, the United States District Court for the District of Rhode Island sentenced Mart nez to five concurrent terms of 51 months in prison, five years of supervised release, including a special condition relating to deportation, and the required assessments. Mart nez challenges his sentence because it was based in part on an allegedly erroneous finding that he was a leader or organizer under United States Sentencing Guidelines 3B1.1(c).1 We affirm. I. BACKGROUND I. BACKGROUND According to the Pre-Sentence Report ("PSR") and the transcript of the sentencing hearing, see United States v. Reyes, ___ _____________ _____ 3 F.3d 29, 29-30 (1st Cir. 1993) (stating that upon a guilty plea, the relevant facts should be taken from the PSR and the sentencing transcript); United States v. Castellone, 985 F.2d 21, _____________ __________ 22 (1st Cir. 1993) (same), Drug Enforcement Administration ("DEA") Special Agent Russell Holske purchased cocaine from defendant Mart nez on three separate occasions during an undercover investigation in April through July of 1992. Holske made his first purchase on April 1, 1992, buying 27.7 grams of ____________________ 1 All citations refer to the 1992 version of the Sentencing Guidelines which were in effect at the time of the sentencing. -2- cocaine from Mart nez for $900. On that occasion, Holske met with Mart nez who then made a phone call because he did not have the drugs with him. Shortly thereafter, codefendant Juan Ituribides arrived with the cocaine and handed it to Mart nez who, in turn, handed it to Holske. Two days later, Holske purchased 50.5 grams of cocaine from Mart nez for $1750. As in the first transaction, Mart nez made a phone call before the drugs were delivered; however, on the second occasion, codefendant El as Ventura Morales, instead of codefendant Ituribides, actually brought the cocaine to Mart nez. On July 17, 1992, Agent Holske negotiated with Mart nez for the purchase of "Two Big Eights" (9 ounces) of cocaine for $8000. After Holske and Mart nez met, they were joined by Morales. The three then moved to a new location where Mart nez showed Holske a small sample of cocaine in exchange for a look at the money Holske brought. Morales left and then returned twenty to thirty minutes later at which point DEA agents arrested Mart nez and Morales and seized 223.4 grams of cocaine. Mart nez contests this version of events. He claims that he was not the source or supplier of the cocaine but instead merely an intermediary who was offered money by a confidential informant to assist in the sale. During the first sale, Mart nez contends, Ituribides supplied the cocaine and collected the money for the deal while Mart nez only assisted by passing the cocaine to Holske. For the other two purchases, Mart nez claims that he -3- was approached by the confidential informant and asked for the whereabouts of Ituribides. On those occasions, Mart nez contends, Morales intervened in the discussion and arranged the drug deals. According to Mart nez, his only role was to wait with the informant while Morales went to get the cocaine. II. ENHANCEMENT OF SENTENCE FOR LEADERSHIP ROLE II. ENHANCEMENT OF SENTENCE FOR LEADERSHIP ROLE In calculating Mart nez' sentence, the district court imposed a two level enhancement for being a leader and organizer pursuant to U.S.S.G. 3B1.1(c).2 Mart nez claims the court erred because the presentence report contains insufficient facts necessary to support a finding that Mart nez organized, managed or directed the activities of his codefendants in committing the charged offenses. We review the district court's "role in the offense" determination for clear error. United States v. Schultz, 970 _____________ _______ F.2d 960, 963-64 (1st Cir. 1992), cert. denied, 113 S. Ct. 1020 ____ ______ (1993); United States v. Veilleux, 949 F.2d 522, 524 (1st Cir. ______________ ________ 1991). A leadership role enhancement is warranted where the defendant has exercised control or directed the actions of at least one other person in committing the crime. The sentencing court can take into account such factors as the exercise of decision making authority and the degree of participation in ____________________ 2 U.S.S.G. 3B1.1(c) provides for an increase in the offense level: If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), . . . -4- planning or organizing the offense. U.S.S.G. 3B1.1 comment note 3; Schultz, 970 F.2d at 964; United States v. Panet-Collazo, _______ _____________ _____________ 960 F.2d 256, 261 (1st Cir. 1992), cert. denied, 113 S. Ct. 220 ____ ______ (1992). The evidence from the PSR is sufficient to support the sentencing judge's determination that Mart nez "was a leader and organizer of this little business [to sell cocaine] that he had" and that Mart nez "had working for him Ventura Morales and Interpediz [sic]." According to the PSR, Holske purchased the cocaine "from" Mart nez or "negotiated with" Mart nez during all three of the drug transactions. During the July transaction, Mart nez "arranged to be met" at a certain location and later displayed a sample of cocaine for Holske. On two occasions, Mart nez first met with Holske and then placed a telephone call after which the cocaine was delivered. When considered together, this evidence is sufficient for the judge to conclude that Mart nez arranged and planned each sale and directed the activities of his codefendants who served as assistants or couriers for Mart nez' operation. Mart nez insists that the evidence in the PSR is, at most, only sufficient to support a finding that he was an intermediary. There is nothing, Mart nez claims, to show he gave any orders or directions to anyone or otherwise exercised decision making authority. He further asserts that there is no evidence, beyond the bald statement that Holske "purchased cocaine" or "negotiated" with Mart nez, to support the conclusion -5- that Mart nez set terms and conditions, made the arrangements, or profited from the sale. While the actions reported in the PSR (making the initial contact with the buyer and placing phone calls before each drug delivery) may be consistent with those of an intermediary, they are also consistent with those taken by a leader or organizer. When we factor in Holske's statements that Mart nez "negotiated" the deal and "arranged" the meeting location, we find ample support for the court's inferences that Mart nez was making decisions about terms and conditions when he met with Holske, and exercising control over his codefendants when he made the telephone calls. "'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" Veilleux, 949 F.2d ________ at 525 (quoting Anderson v. City of Bessemer City, 470 U.S. 564, ________ _____________________ 574 (1985)). The sentencing judge, in fact, explicitly rejected Mart nez' alternative version of events when he stated that Mart nez had not been "completely candid with the Court nor with the Probation Counsellor trying to give the impression that he was really working for somebody else, but he wasn't." Mart nez also claims that the sentencing judge failed to make reasonably specific factual findings to support the upward adjustment. This objection is groundless. The sentencing court's explicit rejection of Mart nez' alternative version of events, together with its statements that, based on the evidence in the PSR, Mart nez was a leader of his own business to sell -6- cocaine,3 constitutes specific factual findings which support the upward adjustment. See Schultz, 970 F.2d at 963 n.7; United ___ _______ ______ States v. Wells Metal Finishing, Inc., 922 F.2d 54, 58 (1st Cir. ______ ___________________________ 1991). As we discuss below, any objections to the evidentiary basis for the court's specific factual findings are waived. _____ III. OTHER OBJECTIONS TO THE SENTENCE III. OTHER OBJECTIONS TO THE SENTENCE Mart nez claims that the sentencing judge erred by relying upon information outside his own PSR to determine whether he was a leader and organizer. During sentencing, the judge did, in fact, explicitly base his findings partly upon information contained in the PSR's of Mart nez' codefendants, Morales and Ituribides. Mart nez' counsel, however, failed to voice any ____________________ 3 At the sentencing hearing, the sentencing judge stated: I'm satisfied from the evidence in this matter presented from all the material that I've been privy to not only from this presentence report but from the presentence report involving Morales and Interpediz that this Defendant was a leader, an organizer. He was akin to a self-employed, independent sales representative. I'm satisfied that he didn't own the cocaine, but he was in business for himself selling cocaine and he was going to earn a commission for selling that cocaine and he had working for him Ventura Morales and Interpediz. As a matter of fact, Interpediz was only involved in one instance for a pittance, about $40 was going to be his pay for simply going to the source and getting the cocaine and bringing it to the designated place and Morales was serving in the same function. So the Defendant clearly was a leader and organizer of this little business that he had. So the Probation Office was correct in tacking on two points in this case. -7- objections to this at the hearing. Consequently, the issue has not been preserved for appeal unless there are some "unusually compelling circumstances." United States v. Ocasio-Rivera, 991 _____________ _____________ F.2d 1, 3 (1st Cir. 1993). This exception mainly applies where a correction of the alleged error would ensure the defendant's success and thus prevent a miscarriage of justice. Id. Mart nez __ fails to point out any circumstances, compelling or otherwise, that would be sufficient to overcome his procedural default. Given the sufficiency of the evidence in Mart nez' own PSR and given that the judge, in making a "role in the offense" determination for Mart nez, had to take into consideration the relative roles of all the codefendants anyway,4 we are convinced that no miscarriage of justice has occurred in this case. Mart nez also challenges the sentencing judge's decision to grant only a two level, instead of a three level, decrease in his base offense level for acceptance of responsibility pursuant to U.S.S.G. 3E1.1(b)(2). He concedes, however, that he did not raise this objection during sentencing and that "under the 'plain error' rule, he will not succeed on this point alone." As we have decided all other issues against the defendant, according to his own admission, we must decide ____________________ 4 According to the prosecution, prior to Mart nez' sentencing, the district court had already determined that at least one codefendant, Ituribides, was merely a courier and had awarded Ituribides a downward adjustment for playing a minor role. Defense counsel also referred to this at the hearing and cautioned the judge that such a finding did not necessarily mean that Mart nez was a leader and organizer. The issue of what roles were played by Mart nez' codefendants was thus brought to the judge's attention before his ruling. -8- this one against him as well. Affirmed. ________ -9-