86 F.3d 1147
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Elizabeth MOGAJI, Defendant, Appellant.
 No. 94-2265.
 United States Court of Appeals, First Circuit.
 May 3, 1996.
 
 Appeal from the United States District Court for the District of Rhode Island [Hon. Francis J. Boyle, Chief U.S. District Judge]
 Elizabeth I. Mogaji on brief pro se.
 Sheldon Whitehouse, United States Attorney, and James H. Leavey, Assistant United States Attorney, on brief for appellee.
 D.R.I.
 AFFIRMED.
 Before TORRUELLA, Chief Judge, STAHL and LYNCH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Elizabeth Mogaji was convicted of one count of conspiracy to commit credit card fraud and five counts of fraudulent use of access devices. See 18 U.S.C. § 1029(a)(2). She raises a number of issues on appeal, all of them meritless.
 
 
 2
 1. Motion to Suppress.
 
 
 3
 Defendant argues that the district court should have suppressed the contents of the two plastic bags found by Pamela McCutcheon and turned over to Secret Service Special Agent James Mooney. The government correctly responds that defendant has no standing to contest the search because she did not have a reasonable expectation of privacy in the common basement area of the duplex at 10-12 Stamford Avenue; nor does the fact that defendant's driver's license was found in one of the bags make a difference. See United States v. Thornley, 707 F.2d 622, 625 (1st Cir.1983) (defendant may not protect himself against discovery of an item by taking it from his own premises and hiding it in a place in which he has no legal interest). Further, defendant did not assert ownership of anything in the plastic bags at the suppression hearing--the time at which defendant must carry her burden of showing a privacy expectation. See United States v. Aguirre, 839 F.2d 854, 856 (1st Cir.1988). Because defendant plainly has no standing to contest the search, we need not address defendant's credibility arguments.
 
 
 4
 2. Judgment of Acquittal.
 
 
 5
 Defendant argues that there was insufficient evidence to find her guilty of any of the counts in the indictment. We will address these arguments by count, ending with Count One, the conspiracy charge. We review challenges to the sufficiency of the evidence to determine whether a rational jury could find guilt beyond a reasonable doubt. United States v. Flores-Rivera, 56 F.3d 319, 323 (1st Cir.1995). In so doing, we examine the evidence, along with reasonable inferences, in the light most favorable to the prosecution. Id. The evidence may be circumstantial and the prosecution does not have to exclude every reasonable theory of innocence. United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir.1991). "Furthermore, the reviewing court does not evaluate witness credibility, but resolves all credibility issues in favor of the verdict." Flores-Rivera, 56 F.3d at 323.
 
 
 6
 The above principles dispose of defendant's assertions that many of the witnesses lied on the stand. We have reviewed the trial transcript and conclude that these challenges go instead to the credibility of the witnesses. As such, we will not revisit the jury's evaluation in this regard. See id.
 
 
 7
 (a). Count Two. This count charges defendant and Onyejekwe with using a Chase Manhattan Mastercard in the name of Raymond Walters to purchase two checks in the total amount of $10,150 in violation of § 1029(a)(2). Defendant first argues that none of the exhibits submitted by the government in relation to this charge showed that she had any involvement in procuring these checks. However, defendant is being charged as part of a conspiracy. Under the Pinkerton doctrine, Pinkerton v. United States, 328 U.S. 640 (1946), a member of a conspiracy may be held liable for the substantive crimes committed by co-conspirators if the substantive crimes were committed in furtherance of the conspiracy and while defendant was a member of the conspiracy. United States v. Flores-Rivera, 56 F.3d at 324.
 
 
 8
 We think that a rational jury could have found beyond a reasonable doubt that Onyejekwe used the Raymond P. Walters Mastercard in furtherance of the conspiracy and while defendant was a part of the conspiracy. First, when Onyejekwe and defendant were arrested for using a Mastercard in the name of Beverly Onofrio on July 10, 1991, Onyejekwe was carrying a list of names. On this list appeared names, birth dates and addresses for both Onofrio and Walters. Further, the use of the Walters Mastercard occurred in mid-May to June of 1991--only a month prior to the two occasions on which defendant and Onyejekwe used the Onofrio Mastercard at the Lechmere stores. The jury could reasonably infer, we think, that the use of both the Onofrio and Walters Mastercards occurred as part of one conspiracy.
 
 
 9
 Second, we believe the evidence supports the conclusion that defendant was a participant in the conspiracy when Onyejekwe used the Walters Mastercard. The common law is that one who joins an ongoing conspiracy, as defendant plainly did on July 6 and 10, "is deemed to have adopted the prior acts and declarations of coconspirators, made after the formation and in furtherance of the conspiracy." United States v. Cintolo, 818 F.2d 980, 997 (1st Cir.), cert. denied, 484 U.S. 913 (1987). Given that the names of Walters and Onofrio appeared on the list Onyejekwe was carrying the day defendant was arrested, there was sufficient evidence to convict defendant on Count Two.
 
 
 10
 (b). Count Three. This count concerns the use of Beverly Onofrio's Mastercard at the Lechmere stores on July 6 and 10, in 1991. Defendant first argues that Exhibit # 12, a photocopy of a Lechmere sales slip, was altered to influence the jury. She contends that one order number was written over another and that the employee number, 1034, was handwritten, when the usual Lechmere custom is to have the employee number pre-stamped on the sales slip. Looking at a copy of the sales slip, however, we can discern only one order number--0061903. As for the writing of the employee's number, there is nothing to support defendant's assertion that Lechmere's "usual practice" was to have a printed number.
 
 
 11
 Defendant next attacks the photo identification procedure by which Alex Shtutin--the Lechmere sales person who sold the telefax machines to defendant and Onyejekwe on July 6--identified defendant. However, as far as we can tell, defendant never filed a motion to suppress the photo identification prior to trial; in fact, she did not even object to Shtutin's testimony at trial. We have held that pretrial photo identification procedures are subject to the requirements of Fed.R.Crim.P. 12(b)(3) and motions to exclude such evidence must be made prior to trial. United States v. Gomez-Benabe, 985 F.2d 607, 611-12 (1st Cir.1993). Given Gomez-Benabe, we think that defendant, by not having given the district court a chance to determine if she should be excused from filing a pretrial motion to suppress, has waived her right to challenge the identification procedure on appeal.
 
 
 12
 (c). Counts Four and Five. These counts concern, respectively, the use of Onofrio's Discover Card during June 21, 1991 through June 25, 1991, and the use of Onofrio's AT & T Universal Mastercard during June 26, 1991 through July 24, 1991. Defendant correctly notes, as she did with respect to Count Two, that there was no direct evidence that she ever used either card. Thus, under Pinkerton, the government was required to prove that the use of the Discover Card and the AT & T Universal Mastercard, during the period from June 21, 1991 to July 24, 1991, was carried out by Onyejekwe in furtherance of the conspiracy and while defendant was involved in the conspiracy. See Flores-Rivera, 56 F.3d at 324.
 
 
 13
 In regard to Count Four, the evidence is that the Discover Card was found in Onyejekwe's possession when he was arrested on July 10, and that Onofrio's name was on the list of names Onyejekwe was carrying. Defendant argues that she was in the hospital during the time the Discover Card was used. However, absent any claim that she had withdrawn from the conspiracy, the fact that defendant was somewhere else during her co-conspirator's actions is not relevant. See United States v. Juodakis, 834 F.2d 1099, 1102 (1st Cir.1987) (per curiam). Cessation of activity in a conspiracy is not enough to show withdrawal; rather, a conspirator must take some affirmative act such as a full confession to authorities or a communication to a co-conspirator that he or she is withdrawing from the enterprise. Id. Defendant does not allege the existence of such circumstances here.
 
 
 14
 As for Count Five, defendant points out that the AT & T Universal Mastercard never was recovered. She also argues that there is no evidence connecting her to the use of the AT & T card. We do not think that either ground is a sufficient basis on which to overturn the jury's verdict. First, the question is not only whether defendant used the AT & T card, but also whether Onyejekwe might have used it. In this regard, we note that the AT & T card was applied for in June 1991 and was used during the same period defendant and Onyejekwe were using the other cards in Onofrio's name. Because the evidence linking Onyejekwe to the use of Onofrio's name is so strong, we think that the jury rationally could find that Onyejekwe used Onofrio's AT & T Universal Mastercard.
 
 
 15
 (d). Count Six. This count charged defendant with using a Mastercard in the names of Leonard L. Medeiros and Althea V. Medeiros to withdraw money from automated teller machines. The government's evidence consisted, in part, of photographs of the person who withdrew money with the card in question. McCutcheon had testified that she had rented half of the duplex at 10 Stamford Ave. to defendant who told McCutcheon that she (defendant) was Althea Medeiros. McCutcheon identified defendant as the person in the picture.
 
 
 16
 Defendant argues that the photographs should not have been admitted in evidence because they were too blurry for identification purposes. As a result, she adds, McCutcheon's identification of her was suspect. However, as with the other photo identification, defendant never filed a motion to suppress the photographs. Therefore, she has waived an appellate challenge to them. See Gomez-Benabe, 985 F.2d at 611-12. In any event, defendant's arguments concerning McCutcheon's testimony really go to credibility. Thus, we need not review her claims. See Flores-Rivera, 56 F.3d at 323.
 
 
 17
 (e). Count One. Count one charged defendant with conspiracy to commit credit card fraud. Defendant makes some of the same arguments in support of her contention that the government failed to show a conspiracy between her and Onyejekwe as she made in regard to Counts Two and Four. For the reasons stated in the discussion regarding Count Two, defendant's arguments, first, that the acts in Counts Two, Four and Five took place prior to July 10 and, second, that she only was present in the Lechmere parking lot on July 10 fail. Similarly unavailing are the arguments that there was no evidence that defendant ever used a credit card or helped Onyejekwe use a credit card, that defendant's fingerprints were not found on any cards, and that no cards were found on her person. Under Pinkerton, defendant is responsible for the reasonably foreseeable offenses committed by Onyejekwe in furtherance of the conspiracy since she was a member of the conspiracy during the relevant time periods. See Flores-Rivera, 56 F.3d at 324. The uses of the various credit cards by Onyejekwe clearly were foreseeable.
 
 
 18
 3. Denial of Cross-Examination.
 
 
 19
 Defendant argues that on three occasions she was prevented from conducting cross-examination that would have revealed the biases and perjured testimony of the witnesses. However, a review of the transcript shows that counsel decided to withdraw the questions to which defendant refers and that there is no evidence that either the court or the government "prevented" defendant from cross-examining anyone. Thus, this issue, being fact-based, must be raised as an ineffective assistance claim in a motion under 28 U.S.C. § 2255. See United States v. Georgacarakos, 988 F.2d 1289, 1297 (1st Cir.1993) (an ineffective assistance of counsel claim which involves issues not fully developed in the trial record is not ripe for decision on appeal). For the same reason, we will not consider defendant's other arguments relating to allegedly ineffective assistance of counsel.
 
 
 20
 4. Improper Jury Instruction.
 
 
 21
 Defendant complains that the trial judge failed to instruct the jury that § 1029 requires the government to prove that she "actually used" an unauthorized device to obtain something of value. Because defendant never objected below, we review for plain error. See United States v. McGill, 952 F.2d 16, 17 (1st Cir.1991). The jury instructions plainly reveal that the trial judge correctly instructed the jury that, as Pinkerton holds, defendant could be found guilty of fraudulent use of an access device if the jury found that another's use of such a device was part of the conspiracy, that such use was a reasonably foreseeable consequence of the conspiracy, and that defendant was a member of the conspiracy when the device was used. As a result, there was no plain error.
 
 
 22
 Defendant's second argument is that the trial judge improperly used the word "conspirators" in reciting the overt acts charged in the indictment. Essentially, the trial judge substituted the word "conspirators" for the words "the defendants, Christopher Onyejekwe and Elizabeth Mogaji." Thus, as to the first overt act, the judge stated that "on or about July 6, 1991, conspirators purchased merchandise at Lechmere...." Defendant alleges that this communicated to the jury the trial judge's belief that she was guilty. Again, there is no plain error here. The trial court judge instructed the jury that the indictment was not proof of anything and clearly defined what elements were necessary for the jury to find that defendant was part of a conspiracy. The judge also instructed the jury that he had no opinion concerning the facts.
 
 
 23
 5. Motion to Recuse.
 
 
 24
 Defendant argues that Judge Boyle, the trial judge, should have recused himself due to his bias and prejudice against defendant. She claims that he was convinced of her guilt from the beginning. This claim, in part, arose when defendant and her lawyer allegedly heard Judge Boyle state at a bail reconsideration hearing that there "was a conspiracy among you people." Defendant also rests her recusal argument on Judge Boyle's post-trial threat that he would strike defense counsel's name from the court-appointment list.
 
 
 25
 As for the first comment, it does not appear in the transcript of the bail reconsideration hearing. Further, the court reporter reviewed the tape recording of the bail reconsideration hearing and verified the transcript's authenticity. In any event, defendant has waived this issue by waiting until after trial to file a motion for recusal. See In re Abijue Realty Corp., 943 F.2d 121, 126 (1st Cir.1991) (a litigant, knowing of a ground for recusal cannot wait and decide whether he or she likes the subsequent treatment he or she receives).
 
 
 26
 The second comment, unlike the first, is not even directed at defendant. Further, a reading of the transcript reveals that this apparently was the second time defense counsel was unprepared to go forward on a matter. We do not think that this comment provides what "an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." See In re United States, 666 F.2d 690, 695 (1st Cir.1981) (stating the applicable standard under 28 U.S.C. § 455(a)). Simply, judicial expressions of vexation at lawyers who are not ready to proceed on time do not raise a question of judicial bias.
 
 
 27
 6. Motion for a New Trial.
 
 
 28
 In her recitation of the facts, defendant mentions that the district court denied her motion for a new trial as untimely. However, she fails to include in her brief any argument why we should reverse the trial court's ruling. Thus, she has waived the issue. A review of the issue nonetheless shows that this claim is meritless.
 
 
 29
 Defendant was convicted on May 10, 1994 and the certificate of service of the new trial motion was dated July 6, 1994. Fed.R.Crim.P. 33 requires such a motion to be filed within seven days after verdict. At the hearing on the motion, defendant's trial attorney stated that defendant never had asked him to file a motion for a new trial. Judge Boyle concluded that defendant had been confused over how one obtains a new trial--by a motion or an appeal--and had asked her attorney to file an appeal. In any event, the untimeliness of the motion for a new trial, a finding supported by the evidence, means that the trial court was without jurisdiction to rule on it. United States v. Lema, 909 F.2d 561, 565 (1st Cir.1990).
 
 
 30
 The judgment of conviction is affirmed.