# United States Court of Appeals
## For the First Circuit

No. 09-1131

UNITED STATES OF AMERICA,

Appellee,

v.

ERICK FLORES-RIVERA,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

Vivianne M. Marrero-Torres, Assistant Federal Public Defender, with whom Joseph C. Laws, Federal Public Defender, was on brief, for appellant.
Germán Rieckehoff, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, were on brief, for appellee.

April 6, 2010

**Per Curiam**.  Nearly twenty years ago, when appellant Erick Flores-Rivera was arrested on federal drug charges, the United States Customs Service[1] took possession of his new Jeep Cherokee, $1,903 in cash, and other items.[2]  Pursuant to a plea agreement, Flores pled guilty to two counts in January 1991, and the court imposed a term of imprisonment of 240 months and a $20,000 fine.  Eight years later, in 1999, the government conceded that Flores was entitled to the return of the seized property because it had been improperly forfeited without notice.  Remarkably, however, as a result of procedural errors and misjudgments by the district court, abetted by the government's own conduct and inaction, Flores is still without his property[3] and there has been no proper determination that it may lawfully be withheld from him.  The most glaring of these missteps was the one challenged in this appeal: the district court's sua sponte ruling in December 2008 that the property should be returned but, at the

---

[1] The Customs Service is now known as the United States Customs and Border Protection ("CBP") section of the Department of Homeland Security.

[2] The parties agree that a Puerto Rico driver's license and a social security card also were seized.  Flores contends that a Rolex watch also was taken from him, and the record also contains references to the seizure of a wallet and a beeper.

[3] The Jeep was sold by the government in 1999 for $6,400, and it is therefore the proceeds of the sale, rather than the vehicle, that are now at issue.  In addition, as described infra, Flores claims he should be credited with an amount greater than $6,400.

same time, summarily ordering that the funds be applied to Flores's criminal fine.

At oral argument, the government tried to defend the decision of the district court as not plain error. Subsequently, it sensibly changed its position and acknowledged that the case should be remanded so that the district court can "properly determine" the amount that should be returned to Flores, which also would give the court, as the government finally put it, "the opportunity to comply with the notification requirements and the procedures for enforcement of criminal fines in 18 U.S.C. §§[] 3572, 3611-15." Both the amount owed to Flores for his property and whether that entire sum may be immediately applied to his fine are difficult issues of considerable consequence to him. The Jeep was new when it was seized, and Flores asserts that it was worth $23,000 at that time. A customs employee reported in a 2007 declaration that the vehicle was transferred from storage in June 1992 and used by the agency for almost seven years – without compensation to Flores – until it was sold for $6,400 in 1999.[4] In

---

[4] In this appeal, Flores's counsel raised the question of how much Flores is owed for the Jeep in a motion filed about a week before oral argument. Although the government points out in its supplemental brief that arguments not made in a party's initial brief ordinarily are waived, it acknowledges that an exception is warranted here. Indeed, in the unusual circumstances of this case, which we recount infra, the government arguably had an obligation to bring this valuation issue to our attention. Given the documents in the record, it had to know that the valuation question was unresolved. That fact makes its initial resolve to oppose this appeal all the more perplexing.

addition, Flores entered into a contract with the Bureau of Prisons (BOP) to repay his fine in installments, see infra, but the government contends that the district court nonetheless has the authority to order full payment at any time.

Given the history of this case, we are dismayed that the government chose initially to defend the district court's judicial improvisation, which denied Flores statutory and procedural due process rights designed to protect against just such unexamined deprivations of property. By the time this appeal was filed, Flores already had endured indefensible delays in obtaining relief. In 1999, we vacated the denial of his 1997 pro se motion seeking return of his property and remanded for further proceedings because, as the government acknowledged, Flores had not received adequate notice of the forfeiture proceedings. Not until May 2006 did the government ask the district court to hold a hearing – a request made only after appellant sought mandamus and we directed the government to reply to his petition and "propose or implement a course of action."[5] No hearing has ever been held.[6] Although the

_____

[5] In its Informative Motion dated May 18, 2006, the government requested "additional proceedings to determine the forfeitability of the[] properties," and stated that "a hearing may be required in this case because there is a discrepancy between Flores-Rivera and the United States Custom Service as to the number of items seized and administratively forfeited."

[6] We note that, on July 28, 1999, the district court held a hearing on a motion by Flores seeking certification to file an untimely motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. It appears that no attention was given in

-4-

government agreed during a status conference on August 2, 2006 to return the property, it did not at that time know the location of the items, including the cash seized at the time of Flores's arrest.  A year later, in August 2007, the government informed the district court that the Jeep had been sold and the $1,903 in currency had been deposited in the Treasury Department's Asset Forfeiture Fund.[7]

Meanwhile, in October and December 2006, and in February 2007, Flores filed pro se motions seeking the appointment of counsel for the forfeiture proceedings.  Flores claims to have

that proceeding to our remand order, which had been entered on the district court docket on June 3.  Meanwhile, Flores had been charged in 1991 in a separate criminal case, see United States v. Flores-Rivera, 56 F.3d 319 (1st Cir. 1995), and the docket in that case shows that he was represented by counsel for post-conviction proceedings related to his sentencing that were occurring between 2000 and 2005.  At a re-sentencing hearing on April 5, 2004, Flores was sentenced to a total of 408 months' imprisonment to be served consecutively to the term of imprisonment imposed in the criminal case underlying his forfeiture claim.  We affirmed that sentence in an unpublished decision on July 29, 2005, and our docket in the return-of-property mandamus action shows that Flores's representation by counsel terminated on that date.  Although the criminal matters overlapped in time with the pendency of his motion for return of property, the forfeiture-related filings were all pro se. We found no indication on the district court docket that the court or counsel considered our 1999 remand before Flores's motion for mandamus and the government's resulting May 2006 Informative Motion.

[7]  The government did not report whether the proceeds from the sale of the Jeep were deposited into the same account. As for the other items allegedly seized, the government has no record of the Rolex watch, and it reported that the agency was unable to locate the driver's license and social security card.  The government's notice to the court did not mention the wallet.

learned for the first time in 2008 that counsel had in fact been appointed for him in July 2006. The appointed counsel appeared at the August 2006 status conference, but there is no evidence that Flores was told of the appointment, that the appointed counsel ever met with Flores, or that he took any other action on Flores's behalf.

On November 12, 2008 – following yet another pro se request by Flores for mandamus relief – we directed the district court to address the discrepancies in the value of the forfeited items.[8] When the court issued its final order three weeks later, however, it did not discuss Flores's contentions concerning the value of the returned property. Instead, disregarding the procedures applicable to the collection of delinquent criminal fines, see 18 U.S.C. § 3612, and without a motion from the government, the court simply ordered that the proceeds from the Jeep and the $1,903 in currency be deposited and credited toward his fine. Flores filed a pro se notice of appeal and, on January

---

[8] Our order stated, in relevant part:

> In response to petitioner's latest request for mandamus relief, the government has proposed a final disposition, and petitioner has opposed that disposition in part. In these circumstances, we think the district court should address the government's proposal and the petitioner's opposition and endeavor to bring this litigation to a final conclusion.

In his opposition, Flores had challenged the amount of compensation proposed by the government for the Jeep in light of its much higher value at the time it was seized.

16, 2009, the district court granted his motion for new counsel and appointed the Federal Public Defender to represent him.

Despite the factual and procedural complexity of this case, Flores was effectively left to represent himself until the public defender was appointed in January 2009.[9]  Further delay is unacceptable, and his claims must now be given serious, careful attention.  In addition to the dispute over the appropriate value for the Jeep, Flores invokes the contract he signed in February 2003 to participate in the BOP's Inmate Financial Responsibility Program (IFRP).  See 28 C.F.R. §§ 545.10-545.11.  He agreed to pay $25 quarterly, beginning in June 2003.  Records submitted by Flores and the government indicate some confusion about Flores's outstanding debt and, as noted above, a question of law exists concerning the district court's authority to bypass the contract and immediately order full payment of the fine.

On remand, the district court should promptly conduct a hearing, follow the applicable statutory procedures, and otherwise

---

[9] In its May 2006 Informative Motion to the district court, the government noted that Flores was "free to request from the Court the appointment of counsel" and that "the Court may wish to appoint counsel given the complexity of the possible forfeiture issues."  It thus implicitly suggested that providing Flores with counsel would be advisable and cited case law for the proposition that complex forfeiture issues may warrant appointment of counsel. See United States v. Giraldo, 45 F.3d 509, 512 (1st Cir. 1995) and United States v. Chambers, 192 F.3d 374, 378 (3d Cir. 1999).  As noted above, the court took the suggestion and appointed counsel in July 2006, though it appears that counsel contributed little or nothing to the resolution of his case.

provide Flores with the long-delayed process to which he is entitled.  It is time for this embarrassing saga to end.

The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.