# United States Court of Appeals

## For the First Circuit

---

No. 07-1675

UNITED STATES OF AMERICA,

Appellee,

v.

ANTHONY SAUNDERS,

Defendant, Appellant.

---

No. 07-1704

UNITED STATES OF AMERICA,

Appellee,

v.

SANDRA SAUNDERS,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

---

Before

Boudin, Selya and Stahl, Circuit Judges.

---

          Carmine P. Lepore for appellant Sandra Saunders.
          Robert L. Sheketoff for appellant Anthony Saunders.
          Jennifer Hay Zacks, Assistant U.S. Attorney, with whom Michael
J. Sullivan, United States Attorney, was on brief for appellee.

—————————————

January 21, 2009

—————————————

**STAHL**, **Circuit Judge**.  Sandra and Anthony Saunders, a mother and son, were found guilty by a jury of conspiracy to distribute marijuana.  Sandra was also convicted of possession with intent to distribute, and aiding and abetting; Anthony was acquitted on this second count.  On appeal, the defendants contest various aspects of their convictions and sentences.  After a careful review of the record, we affirm in all respects.

Sandra and Anthony Saunders were involved in an extensive marijuana distribution conspiracy that extended from Texas to Massachusetts.  The conspiracy came to the attention of the Department of Homeland Security, Immigration and Customs Enforcement (ICE) in 2004, when it learned that drug suppliers based in Texas were looking to hire drivers to transport marijuana from Texas to Massachusetts.  Two undercover ICE agents infiltrated the conspiracy and were hired to drive a tractor-trailer containing a large shipment of marijuana from Texas to Massachusetts.

Upon arrival in Massachusetts on November 8, 2004, the undercover agents driving the tractor-trailer were met at a hotel parking lot by three men, including Anthony Saunders.  One of the men gave the agents a plastic bag containing $40,000 in cash as payment for their services, and directed them to drive the tractor-trailer to a warehouse in Billerica, Massachusetts.

At the warehouse, several men (not including Anthony) unloaded the marijuana.  A police helicopter, flying overhead,

videotaped the unloading of the truck. Shortly after the unloading, a red pickup truck arrived at the warehouse and four large green containers were placed in the bed of the truck. Agents followed the pickup truck to a home in Billerica, Massachusetts, where they found Frederick Pidge and Anthony Saunders. When questioned at the residence, Anthony admitted that he had been at the hotel parking lot earlier that day, but only to drop off a friend. The agents obtained a search warrant for the four containers in the red pickup truck and in the ensuing search discovered that they contained 76 "bricks" of marijuana, totaling 585 pounds.

Later on the same day, November 8, a white Ford Econoline van arrived at the Billerica warehouse. It was driven by Sandra Saunders, who was accompanied by her husband, Leon Romprey. Upon arriving at the warehouse, Romprey loaded large trash bags into the rear of the van. Shortly after leaving the warehouse, state police stopped and searched the van, which yielded 14 large trash bags containing 67 "bricks" of marijuana. Again, a police helicopter videotaped portions of the arrival and loading of the van, and the police stop.

A cooperating witness, the owner of the warehouse, testified at trial that Anthony had told him that he (Anthony) had been in the drug business for twenty years, and that the risks of the operation were minimal. The warehouse owner also testified

that Anthony was the person who had arranged to rent the warehouse for the marijuana deliveries and that Anthony usually paid the warehouse owner directly in cash for use of the space.

A second cooperating witness testified that he had helped unload marijuana shipments at the warehouse on four or five occasions. He also testified that another member of the conspiracy had told him that Anthony was "the boss" of the operation and was the one who was in contact with the marijuana suppliers. The witness also identified Sandra Saunders, and said he had seen her at the warehouse twice when marijuana was being delivered. He said that on both occasions she had loaded trash bags of marijuana into her van before leaving.

Sandra and Anthony Saunders were indicted in July 2006, along with two other defendants, and charged with conspiracy to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846 (Count One), and possession of at least 100 kilograms of marijuana with intent to distribute and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two). The district court denied Sandra's motion to sever the trial from that of her son Anthony.

Sandra was found guilty on both counts, while Anthony was only found guilty on Count One, the conspiracy count, and was acquitted on Count Two, the possession charge. Sandra was sentenced to 120 months' incarceration, followed by eight years'

supervised release. Anthony was sentenced to 235 months' imprisonment, and five years' supervised release. Anthony's sentence was longer than Sandra's because the district court increased Anthony's base offense level by four, under U.S.S.G. § 3B1.1(a), based on a finding that he was a leader or organizer of criminal activity involving five or more participants.

On appeal, the co-defendants each raise one independent issue and one joint issue.[1] We consider first the independent claims and then the joint claim.

First, Sandra claims that the trial court erred by denying her motion to sever her trial from that of her co-defendant, Anthony. She alleges that she was unfairly prejudiced by the joint trial because of "the great disparity in the evidence presented against her and her co-defendant, and by the admission of evidence that would not have been independently admissible against her."

---

[1]At oral argument, counsel for Anthony Saunders raised a Kimbrough issue. See Kimbrough v. United States, 128 S. Ct. 558 (2007). The basic claim was that the district court failed to understand the extent of its discretion to deviate from the sentencing guidelines based on a policy disagreement. However, a fair reading of the sentencing transcript does not lead to that conclusion. Counsel for Saunders is correct that the judge discussed the policy question of whether marijuana cases should be treated more leniently than other drug cases. However, it is evident from the judge's overall comments that he was aware of his ability to fashion a sentence that differed from the guideline range, and that, in his view, it was not appropriate to deviate from the guidelines in this case given the extent of the marijuana distribution operation.

Rule 14(a) of the Federal Rules of Criminal Procedure permits a trial judge to sever a defendant's trial if a consolidation "appears to prejudice a defendant." However, we afford great deference to the trial court in deciding whether to grant a severance and review only for "manifest abuse of discretion." United States v. DeLuca, 137 F.3d 24, 36 (1st Cir. 1998). As we have said many times, the "general rule is that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources." United States v. Soto-Beniquez, 356 F.3d 1, 29 (1st Cir. 2004). The preference for a joint trial is particularly strong where the charge is conspiracy. See DeLuca, 137 F.3d at 36; see also United States v. Tejeda, 481 F.3d 44, 54 (1st Cir. 2007) ("This rule has particular resonance in drug conspiracy cases, where multiple defendants often share a single indictment.").

The trial court's refusal to sever Sandra's trial did not amount to a manifest abuse of discretion, or for that matter any error at all. It was entirely proper for Sandra to be tried together with her son, and there is nothing about a joint trial in this case that distinguishes it from any other run-of-the-mill conspiracy case. Though Sandra clearly played a smaller role in the conspiracy than her son, the nature of proving a conspiracy charge is that "virtually all the evidence relating to the other conspirators [is] also directly relevant to, and, therefore,

independently admissible in, the prosecution's case against" the defendant requesting severance. United States v. Flores-Rivera, 56 F.3d 319, 325-26 (1st Cir. 1995). And "[w]here evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect." United States v. O'Bryant, 998 F.2d 21, 26 (1st Cir. 1993).

We also note that the trial judge gave the jury clear instructions to consider each defendant and each count separately. The verdict slip as well provided separate pages for each defendant and each count. Finally, the jury verdict itself suggests that the jury did indeed make an individualized assessment as to each defendant and charge, because as to Count One, the jury assigned responsibility for different drug quantities to each defendant (over 1,000 kilograms for Anthony, and over 100 but less than 1,000 kilograms for Sandra), and as to Count Two, the jury convicted Sandra but acquitted Anthony of possession with intent to distribute.[2]

[2]Sandra argues that the fact that the jury convicted her on Count Two (the possession charge) but acquitted her son on the same charge supports her position that the joint trial substantially prejudiced her due to "spillover." We disagree. Though the evidence showed that Anthony was indeed a mastermind of the operation while Sandra was not, as between the two defendants only Sandra was found by law enforcement in actual possession of marijuana. In contrast, Anthony could only have been convicted on Count Two under a theory of constructive possession. Therefore, the jury's verdict is not indicative of any prejudice created by the joint trial, and in fact supports the conclusion that the jury

-9-

We turn now to the second issue raised on appeal, this one raised only by Anthony. Anthony takes issue with the district court's decision at sentencing to increase his base offense level by four levels, under U.S.S.G. § 3B1.1(a). That guideline advises an increase of four levels where the district court finds that a defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Anthony argues that the four-level leadership increase was imposed in error because his acquittal on Count Two (possession with intent to distribute) shows that the jury determined that he was not the leader of the conspiracy. This argument lacks logical coherence. The question of whether Anthony was a leader of the conspiracy was simply not implicated by the possession charge because no element of the charged crime of possession required a determination as to leadership. In other words, in order to reach a decision on whether Anthony was guilty of possession, the jury did not need to consider whether Anthony was a leader of the conspiracy.

In addition, even if such a consideration were implicated by the jury's acquittal on the possession charge, a district judge is able to find a fact for sentencing purposes under the less onerous preponderance of the evidence standard, even if the jury

followed the district court's admonishment to consider each defendant individually.

did not find sufficient evidence to sustain the charge beyond a reasonable doubt. See United States v. Picanso, 333 F.3d 21, 25-26 (1st Cir. 2003). Further, "we review role-in-the-offense determinations, steeped in the facts of the case, for clear error." United States v. Martinez-Medina, 279 F.3d 105, 123 (1st Cir. 2002). There was evidence from the cooperating witnesses that Anthony was indeed one of the leaders of the drug conspiracy, that he maintained the contacts with the drug suppliers in Texas, arranged and paid for use of the Billerica warehouse, and held himself out to be a leader of the operation. Given these facts, the district court did not clearly err in imposing the four-level increase; nor did the increase contradict any determination reached by the jury.

Finally, we reach the third claim, which both defendants press on appeal. Sandra and Anthony argue that they suffered prejudicial error and should be granted a new trial because the jury reached its verdict without reviewing audio and video footage that had been admitted into evidence and previously shown at trial. This court normally reviews a district court's response to a jury's request to review evidence during deliberations for abuse of discretion. See, e.g., United States v. Hyson, 721 F.2d 856, 865 (1st Cir. 1983). Though most cases in this area involve a jury request to review transcripts of testimony or have testimony read back, the considerations involved in those situations and the

present one are analogous. In this case, because neither Sandra nor Anthony objected to the district court's efforts to facilitate the review of the audio and video exhibits, we review only for plain error. United States v. Taylor, 54 F.3d 967, 972-73 (1st Cir. 1995).

The facts surrounding the exhibits are as follows. During the trial, the jury watched and listened to numerous audio and video surveillance tapes which were properly entered into evidence. The tapes included footage of the unloading of the tractor-trailer, the loading of the marijuana into various other vehicles, the police stop of Sandra's van, and audio tapes made by the undercover agents in the hotel parking lot. During trial, the footage was played for the jury using a laptop computer belonging to the U.S. Attorney's Office, which was used exclusively for courtroom presentations. Approximately two hours after the jury began its deliberations, it sent a note stating, "Can we request a player to hear audio and see video?" After discussing the note with the parties, the court requested that the U.S. Attorney's Office provide the jurors with a "clean" computer on which the audio and video tapes could be played. The jury was brought back into the courtroom about two hours later and informed that

> we're having a little bit of technical difficulty getting the equipment that's necessary to play the materials that you had asked for and I think we'll have them shortly.
> . . .
> So, what I'm going to do is ask you to go back and continue your deliberations.

-12-

The jury returned to its deliberations. Meanwhile, the court was informed that the U.S. Attorney's Office was experiencing technical problems with playing back the audio and video on the "clean" laptop. In response, the court proposed replaying the audio and video in the courtroom for the jurors, in the presence of the courtroom clerk, a technical support person from the U.S. Attorney's Office, and the court reporter. However, counsel for both Anthony and Sandra objected to this proposal on the ground that jury deliberations should be completely private.

Less than an hour later, the jury sent a second note: "Is the delay due to sensitive materials? And then, if so, can we just get an audio player?" At this point it was almost 6:00 PM. The judge sent the court clerk to tell the jury that the material would not be available within the next half hour, and to ask whether the jury would rather go home for the evening. Within about fifteen minutes of that notification, the jury sent word that it had reached a verdict. As a result, the audio and video surveillance tapes were never reviewed by the jury during its deliberations.

Turning from the facts in this case to the governing law, we have said that "in responding to a jury's expressed desire to rehear testimony," a judge should consider such factors as "whether the request is 'reasonably well-focused,' whether there is any 'physical or logistical impairment to reading' the testimony back, and the amount of time the procedure would probably consume."

United States v. Akitoye, 923 F.2d 221, 226 (1st Cir. 1991) (quoting United States v. Argentine, 814 F.2d 783, 787 (1st Cir. 1987)).  In this case, the judge worked diligently to cause the requested materials to be provided to the jury.  When technical problems delayed the provision of the tapes to the jury, the judge proposed replaying the material in the courtroom instead -- a proposal the defendants rejected.[3]  It was within the judge's discretion to deny the jury's request entirely, given the "physical or logistical impairment" that arose to replaying the video and audio in the jury room.  But the judge did not deny the request outright; rather he took great pains to fulfill the request.  Also weighing heavily in favor of the court's approach are that the court moved expeditiously to try to deal with the technical problem, there was no indication of bad faith on the part of the U.S. Attorney's Office in providing the means to review the evidence, and the exhibits had been shown repeatedly to the jury at trial.  Therefore, we discern no error, plain or otherwise.

For the foregoing reasons, we **affirm** the judgments of the district court.

---

[3]We express no opinion as to whether the defendants' objection on this point was justifiable.