**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 11-1707

UNITED STATES,

Appellee,

v.

CARLOS ROBERTO RODAS, aka Carlos Rodas-Esposito,
aka "Don Carlos,"

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter,* Associate Justice,
and Lipez, Circuit Judge.

John L. Calcagni, III for appellant.
Donald C. Lockhart, Assistant United States Attorney, with
whom Peter F. Neronha, United States Attorney, was on brief, for
appellee.

May 1, 2013

---

* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** Carlos Roberto Rodas appeals his conviction for drug trafficking offenses, raising various evidentiary and constitutional arguments in support of reversal. The appeal comes to us as a companion to United States v. Figueroa, Nos. 11-1701, 11-1702, 2013 WL 388110 (1st Cir. Jan. 30, 2013). Like its recent predecessor, this case raises no substantial issue, and the conviction will be affirmed with comparable brevity.

I

Along with the Figueroa defendants, Rodas was involved in a criminal conspiracy to import heroin from Guatemala to the United States. While his co-conspirators bought the heroin in Guatemala and sold it in this country, Rodas acted as a courier. In Guatemala, he would swallow heroin wrapped in plastic, which he would excrete after traveling to Rhode Island. He ran this gamut six times.

The Government's charges against him on account of drug trafficking included conspiracy to distribute heroin. At trial, the Government provided evidence gained from 133 intercepted phone calls and extensive surveillance, and it introduced seized heroin worth over $100,000 and supplies for processing it. The jury convicted Rodas on all counts, and the district court sentenced him to 121 months' incarceration. 28 U.S.C. § 1291 provides jurisdiction over this timely appeal, comprising four arguments.

II

A

Rodas contends that introducing the incriminating wiretapped telephone calls against him violated the Sixth Amendment's Confrontation Clause. He argues that the recordings contained "testimonial" hearsay, which may not be admitted unless the defendant had the opportunity to cross-examine the absent declarant. The claim is meritless.

To begin with, Rodas did not preserve this issue in the district court. He says that he did so by referring to the Confrontation Clause during a colloquy on his motion for severance and by moving to use some selections from the recorded phone calls in the defense case. But in neither instance did Rodas squarely (or tangentially) raise the constitutional issue he now presents, nor did he ever object to any failure by the district court to make a decision rejecting his Sixth Amendment claim. Our review, therefore, is only for plain error and goes no further than the first showing that a defendant must make: that an error occurred. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Crawford v. Washington held that the confrontation right guaranteed by the Sixth Amendment bars admission of "testimonial statements of [a witness] absent from

-3-

trial," unless the defendant has had the opportunity to cross-examine the person quoted. 541 U.S. 36, 59 (2004). Thus, "the threshold question in every case is whether the challenged statement is testimonial." United States v. Figueroa-Cartagena, 612 F.3d 69, 85 (1st Cir. 2010).

The statements admitted against Rodas were not. We have recently held that "coconspirator statements . . . are, by their nature, not testimonial." United States v. Ciresi, 697 F.3d 19, 31 (1st Cir. 2012); see also United States v. Rivera-Donate, 682 F.3d 120, 132 n. 11 (1st Cir. 2012) ("[S]tatements made during and in furtherance of a conspiracy are not testimonial . . . ."). And because the recorded calls unambiguously contain statements made by Rodas's co-conspirators in furtherance of the conspiracy (and Rodas has not come close to carrying his burden to show otherwise), his Confrontation Clause argument is foreclosed.

The conspiracy is also one reason that Rodas fails in his related claim that the admission of the calls violated Bruton v. United States, 391 U.S. 123 (1968), in which the Supreme Court held that "'powerfully incriminating extrajudicial statements of a codefendant'—those naming another defendant" can be "so prejudicial that limiting instructions cannot work." Gray v. Maryland, 523 U.S. 185, 192 (1998) (quoting Bruton, 391 U.S. at 135). Bruton self-evidently has little to do with this case, and even when Bruton might otherwise apply, it "does not bar the use of a co-

-4-

conspirator statement made in furtherance of the conspiracy."
United States v. De La Paz-Rentas, 613 F.3d 18, 29 (1st Cir. 2010).
There was no error, plain or otherwise.

B

Assuming that admission of the phone transcripts was constitutional, Rodas argues that they should nonetheless have been excluded under Federal Rule of Evidence 801(d)(2)(E) because there was inadequate evidence of his involvement in the conspiracy. Our review is for abuse of discretion, and we find none. See United States v. Vázquez-Botet, 532 F.3d 37, 65 (1st Cir. 2008).

In assessing whether hearsay is admissible as a co-conspirator statement under Rule 801(d)(2)(E), the district court must make four findings: "(1) a conspiracy existed; (2) the defendant was a member of the conspiracy; (3) the declarant was also a member of the conspiracy; and (4) the declarant's statement was made in furtherance of the conspiracy." United States v. Díaz, 670 F.3d 332, 348 (1st Cir. 2012); accord United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977). The government must also supply evidence of a defendant's membership that is extrinsic to the communications admissible because of the conspiracy itself. Díaz, 670 F.3d at 348. Here, the district court found "the Government has met its burden sufficient to satisfy the Petrozziello requirements, including [presentation of] evidence that is outside the phone calls themselves so that these phone

-5-

calls can be fully admitted as statements of co-conspirators." J.A. 4:257.

Rodas says that the district court's finding that Rodas was a member of the conspiracy ignored a lack of the essential extrinsic corroboration, but the record more than sufficed. The Government presented evidence that Rodas was photographed with his co-conspirators at 48 Grant Street in Cranston, Rhode Island, outside the house where the heroin was seized, that he made six trips from Guatemala to Rhode Island, and that the timing of Rodas's trips to Guatemala corresponded with the actions of the others in preparing for the arrival of a new supply of heroin. There was evidence that after his plane reached the United States on the first leg of the trip to Rhode Island, he would call a co-conspirator, who would relay the message that he had "crossed the line" to the others, J.A. 1:320-21, 444-45; shortly thereafter, he would meet the other co-conspirators at the Grant Street apartment; and soon after that they would resume selling the drug. We could go on, but we need not under the deferential standard of review. Admitting the calls was not an abuse of discretion.

C

Rodas next claims that the district court erroneously denied his motion to sever his trial from that of his co-conspirators. Our review is for abuse of discretion, see United

-6-

States v. Tiem Trinh, 665 F.3d 1, 17 (1st Cir. 2011), and again there was none.

"If the district court decides not to sever [a] trial, the defendant bears the burden of making a strong showing that prejudice resulted from the denial of severance, and prejudice in this context 'means more than just a better chance of acquittal at a separate trial.'" United States v. DeCologero, 530 F.3d 36, 52 (1st Cir. 2008) (quoting United States v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990)). Severance is only warranted on showing "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

Rodas relies on spillover prejudice he supposedly suffered from the recorded calls, which he argues were only admissible against his co-defendants, as well as from the admission of 66 heroin pellets seized from the Figueroa residence. He claims further prejudicial spillover from evidence of cocaine discovered in Ervin Figueroa's car and from the records of calls related to Ervin Figeuroa's money laundering charges. In sum, he argues that this evidence "prevent[ed] the jury from making a reliable judgment about guilt or innocence." Id.

The short answer to these arguments is the jury's supportable finding that he was a conspirator with the others,

which renders the spillover claims inapposite. As explained before, the calls were properly admitted against Rodas, so there was no spillover prejudice. And as for the balance of the evidence Rodas cites, we have held that "the nature of proving a conspiracy charge is that 'virtually all the evidence relating to the other conspirators [is] also directly relevant to, and, therefore, independently admissible in, the prosecution's case against' the defendant requesting severance." United States v. Saunders, 553 F.3d 81, 85 (1st Cir. 2009) (quoting United States v. Flores-Rivera, 56 F.3d 319, 325-26 (1st Cir. 1995)). But even if we were to assume some of the evidence was not admissible against Rodas, it was dwarfed by what did properly count against him and would have been admissible in a solo trial. And any possible prejudice was cured by the district court's careful limiting instruction that the jury consider the charges against each defendant individually and require proof of his membership in the conspiracy by "evidence of the Defendant's own words or actions." J.A. 4:284.

D

Finally, Rodas joins the arguments of his co-conspirators, Ervin and Elio Figueroa, that the wiretap evidence should have been suppressed on the statutory ground that the use of a wiretap was not necessary. For reasons explained in our opinion in Figueroa, this position is not well taken. See Figueroa, 2013

-8-

WL 388110, at *1 (finding that the government's submissions "staunchly support a finding that other, less intrusive investigative means could not reasonably have been expected to achieve the goals of the investigation").

### III

We affirm the judgment of the district court.

It is so ordered.